**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **VELETTA COLEMAN,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | No. 3:21-CV-1253-B-BH |
| | ) | |
| **TODD COMBS, Chief Executive Officer** | ) | |
| **and President, GEICO COUNTY MUTUAL** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Based on the relevant filings and applicable law, the official capacity claims against the judges and their staff should be **DISMISSED without prejudice** under the Eleventh Amendment, and the remaining claims should be **DISMISSED with prejudice** for failure to state a claim.

## I.  BACKGROUND

This civil rights action arises from a motor vehicle accident and the ensuing state court litigation. (docs. 1, 1-1, 12–15.) Veletta Coleman (Plaintiff) sues the other driver; the insurance company that insured both her and the other driver, its chief executive officer, and its parent company; her former attorneys, their firms, and their employees; the driver's attorneys and their firm; the mediator who mediated the case; and two judges who presided over the state court trial proceedings and a staff member (collectively Defendants). (*See id.*) She claims that during the litigation and court proceedings, Defendants conspired to deprive her of her civil rights under 42 U.S.C. §§ 1981, 1983, and 1985, the Americans with Disabilities Act, the Age Discrimination Act, and the Civil Rights Act of 1964, based on her race, color, age, national origin, disabilities, sex, financial status, and citizenship. (*See id.*) She also asserts several state law claims, including breach

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for judicial screening.

of contract, breach of the duty of good faith and fair dealing, legal malpractice, breach of fiduciary duty, negligence, and claims arising under the Texas Penal Code. (*See id.*)

Plaintiff contends that on October 16, 2015, she was injured and her vehicle was damaged during a "hit and run" accident committed by Megan Finley-Benton (Driver) while inebriated. (doc. 1 at 2–3, 8.)[2] Plaintiff alleges that Driver left the scene of the accident and was later cited by a police officer at her home. (*Id.* at 8.) Although both drivers were insured by GEICO-County Mutual Insurance Company (Insurer), it allegedly provided Driver a "court-appointed attorney" but did not provide one to Plaintiff. (*Id.*) As a result, Plaintiff hired Spencer P. Browne and the Law Firm of Reyes, Browne, Reilly (collectively First Attorneys). (doc. 14 at 23.) On March 1, 2016, First Attorneys informed her that they were withdrawing from representing her.[3] (doc. 14 at 22–23; doc. 15 at 1, 3, 5.) Plaintiff then apparently hired Eric Marye and Monica Garcia Bohuslav and the Marye Law Firm (collectively Second Attorneys) to represent her.[4] (doc. 13 at 21–22.)

The parties participated in an unsuccessful mediation led by Jay Zeleskey (Mediator) on September 13, 2018. (*See id.* at 16–18.) She alleges that one of the Second Attorneys showed up late and was not dressed professionally, he was rude and insulting to her, and he told her that he believed she was faking her injuries and "repeatedly tried to force … [her] to settle for $15,000." (*Id.* at 17.) Second Attorneys allegedly conspired with Mediator, Driver, and the attorneys representing Driver

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page.

[3] Plaintiff attached the letters from First Attorneys informing her of their intent to withdraw from representing her in multiple cases involving different car accidents, including the one giving rise to this suit. (*See* doc. 15 at 1, 3, 5.) Her pleadings suggest that she already had an attorney when she hired First Attorneys, but that individual is not mentioned further and is not named as a defendant in this case. (*See* doc. 14 at 23.)

[4] Plaintiff asserts many of the same claims against both First Attorneys and Second Attorneys (including the law firms and staff members). (*See generally* docs. 12–15.) Where the claims asserted against them are the same, they are referred to collectively as "Plaintiff's attorneys."

and their law firm (Opposing Counsel) to carry out this "fake" mediation and deprive her of her rights. (*Id.* at 16–17.)

In a letter dated November 3, 2018, and received by Plaintiff on December 3, 2018, Second Attorneys withdrew from the case. (*Id.* at 18.) The trial was scheduled to begin the next day, December 4, 2018, (*id.*), but it was ultimately was continued until May 29, 2019, (*see* doc. 1 at 8). On that date, Plaintiff was informed ten minutes before the trial began that Judge Eric Moye (Judge Moye) would be presiding, rather than the judge who had been handling the case prior to that date. (*Id.*) She alleges that Judge Moye wrongfully admonished her for appearing without representation, failing to submit any pre-trial filings, and attempting to present medical records that were inadmissible hearsay.[5] (*Id.* at 7.) She also claims that Judge Moye ignored her objections in court and refused to wait for her daughter (a witness) to arrive, but that he waited for Driver, who arrived late. (*Id.*) Plaintiff contends that Judge Moye was biased and corrupt, and he was seen joking with the jury. (*Id.*) She alleges that Melinda Thomas, an administrator for the court (Court Administrator), was aware of filings that Plaintiff had submitted before trial and conspired with other defendants to deprive her of her rights. (doc. 1 at 8; doc. 13 at 4.) Plaintiff maintains that Opposing Counsel "blatantly fabricat[ed]" their defense during trial. (doc. 1 at 6.)

Plaintiff also alleges that Todd Combs, the Chief Executive Officer and President of Insurer (CEO), and Berkshire Hathaway, Insurer's parent company (Parent Company), misrepresented her case and fabricated her driving record to ensure that she could not purchase insurance from any other provider, so she had no choice but to stay with Insurer. (doc. 12 at 3–4.) They also allegedly

---

[5] It is unclear from the pleadings whether this conduct by Judge Moye occurred on the original trial date, December 4, 2018, or the second trial date, May 29, 2019. (*See* doc. 1 at 8.) Additionally, Plaintiff does not clarify Judge Maricela Moore's (Judge Moore) role in the underlying state proceedings, but she appears to have been the first judge who presided over them. (*See id.* at 7.)

conspired with the other defendants to curtail Plaintiff's constitutional rights and breached the parties' insurance agreement. (doc. 1 at 2, 4, 6.) She contends that Second Attorneys aided and abetted CEO and Parent Company. (*Id.* at 8.)

Plaintiff seeks $100 million in damages.[6] (*See* doc. 1 at 9.)

## II. PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis*, her complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted." A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28. Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). Under that standard, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. JUDGES & STAFF

Plaintiff sues Judge Moye, Judge Moore, and Court Administrator in their official capacities based on their actions in her case. (doc. 13 at 4, 13.) She also sues Judge Moore and Court

---

[6] Although Plaintiff also refers to a damages in the amount of $750,000, it appears that she intended this amount to represent only a portion of the total award she seeks because she refers to a $100 million award throughout her pleadings. (*See, e.g.*, doc. 1 at 1, 6, 9–11.)

Administrator in their individual capacities. (*See id.* at 13.)

## A.   <u>Official Capacity</u>

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The State of Texas is the real party in interest when the plaintiff seeks relief that would be provided by the state. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir. 1985) (in turn citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101 & n.11 (1984))). Any suit against the judges and Court Administrator in their official capacities or as officers of the State of Texas is a suit against the State. *See id.; see also Graham*, 473 U.S. at 165; *Freedom from Religion Found., Inc. v. Mack,* 4 F.4th 306, 311 (5th Cir. 2021).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328–29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, or 1985. *See Wren v. Midwestern State Univ.*, No. 7:18-CV-0060-O-BP, 2019 WL 501920, at *6 (N.D. Tex. Jan. 23, 2019); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a)." *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

Any official capacity claims for monetary damages against the judges and Court Administrator are barred by Eleventh Amendment immunity and should be dismissed without prejudice.[7]

## B.    <u>Individual Capacity</u>

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id.* at 11. A plaintiff can overcome the bar of judicial immunity only under two very limited circumstances. *See id.* at 11–12; *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). First, a judge is not immune from suit

---

[7] Claims barred by sovereign immunity can only be dismissed for lack of subject matter jurisdiction "and not with prejudice." *Warnock*, 88 F.3d at 343.

for actions that are not "judicial" in nature. *See Mireles*, 502 U.S. at 11. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [a court should] look to the particular act's relation to a general function normally performed by a judge . . . ." *Id.*

> [The Fifth Circuit] has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. These factors are broadly construed in favor of immunity.

*Davis*, 565 F.3d at 222–23 (citations omitted). "'The absence of one or more factors will not prevent a determination that judicial immunity applies.'" *Thomas v. State*, 294 F. Supp. 3d 576, 600 (N.D. Tex. 2018) (quoting *Carter v. Carter*, No. 3:13-CV-2939-D-BF, 2014 WL 803638, at *1 (N.D. Tex. Feb. 20, 2014) (in turn citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005))). Second, a judge is not immune from suit for actions that although judicial in nature, are taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12; *see also Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

Here, Plaintiff complains of actions taken by Judge Moore while presiding over the state court litigation, which were normal judicial functions, occurred in a courtroom, were directly related to a controversy before Judge Moore, and arose out of Plaintiff's visit to Judge Moore for the purpose of resolving a pending case. Plaintiff does not allege that Judge Moore acted without

jurisdiction. Because the alleged conduct was firmly within the scope of her judicial duties, Judge

Moore is entitled to judicial immunity from any federal claims against her in an individual capacity.

To the extent that Plaintiff's filings may be liberally construed as asserting any state law individual

capacity claims against her, she is also entitled to judicial immunity for those claims because

"'Texas courts employ the same judicial immunity analysis as the federal courts in this Circuit[.]'"

*See Thomas*, 294 F. Supp. 3d at 601 (quoting *Durrance v. McFarling*, No. 4:08-CV-289, 2009 WL

1577995, at *3 (E.D. Tex. June 4, 2009) (in turn citing *Hawkins v. Walvoord*, 25 S.W.3d 882, 890

(Tex. App.—El Paso 2000, pet. denied))); *see also Sharp v. Palmisano*, No. 13-5429, 2013 WL

5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Hawkins*, 25 S.W.3d at 890) (recognizing that

Texas's judicial immunity principles mirror the federal judicial immunity doctrine).[8]

As for the claims against Court Administrator, individuals who perform judicial functions

"have absolute [quasi-judicial] immunity from actions for damages arising from acts they are

specifically required to do under court order or at a judge's discretion." *Clay v. Allen*, 242 F.3d 679,

682 (5th Cir. 2001); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981); *see also Mays v. Sudderth*,

97 F.3d 107, 113 (5th Cir. 1996) (holding that officials acting within the scope of their authority

enjoy absolute immunity "from a suit for damages to the extent that the cause of action arises from

his compliance with a facially valid judicial order issued by a court acting within its jurisdiction").

This is because "court personnel should not serve as a lightening rod for harassing litigation." *In re

Foust*, 310 F.3d 849, 855 (5th Cir. 2002). They "enjoy [ ] only qualified immunity[, however,] for

those routine duties not explicitly commanded by a court decree or by the judge's instructions."

*Clay*, 242 F.3d at 682. A court administrator has absolute immunity when her actions are prescribed

---

[8] Any individual capacity claims against Judge Moye would fail for the same reasons as those against Judge Moore.

by court rules. *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 643 (N.D. Tex. 2007).

Here, Plaintiff alleges that Court Administrator conspired with other defendants to deprive her of her rights. She has not alleged that any actions were not taken under court order, according to court rules, or at a judge's discretion, so Court Administrator also has absolute immunity for these actions. *See Small v. Dall. Cnty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (per curiam) (holding that the clerk of a state district court was entitled to absolute immunity absent allegation that any of his actions were not taken under court order or at judge's discretion); *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *3 (N.D. Tex. Dec. 21, 2011) (finding that a county clerk had absolute immunity for claims asserted against her under § 1983).

Because Court Administrator has absolute quasi-judicial immunity, any claims against her should be dismissed for failure to state a claim. *See Florance*, 500 F. Supp. 2d at 635–36 (dismissing claims against a court clerk for failure to state a claim based on absolute immunity).

### IV. OPPOSING COUNSEL

Plaintiff sues Opposing Counsel for allegedly misrepresenting the case to the jury at trial and conspiring with other defendants to violate her rights. (*See* doc. 1 at 6; doc. 1-1 at 12–16; doc. 12 at 21–25; doc. 14 at 15–16.)

"'Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client.'" *Ainsworth v. Wells Fargo Home Mortg., Inc*., No. 3:14-CV-1942-M, 2014 WL 7273945, at *8 (N.D. Tex. Dec. 22, 2014) (quoting *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-699-CV, 2008 WL 2938823, at *2 (Tex. App.—Austin July 29, 2008, no pet.)); *accord Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. 2014) (per curiam) (holding that a law firm

was improperly joined as a party because "attorneys are generally immune from suits brought under Texas law against them by their adversaries if the action arises out of the duties involved in representing a client"); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (finding that an action that is "part of the discharge of [the attorney's] duties to [his] client" is immune from liability). The application of this qualified immunity to attorneys is based on the fact that the public has an interest in "loyal, faithful and aggressive representation by the legal profession." *Id.* (quoting *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App.—El Paso 1988, writ denied)); *see Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4092590, at *2 (E.D. Tex. Aug. 16, 2012) (citing *Reagan*, 2008 WL 2938823, at *2). In fulfilling the duty to "zealously represent his clients within the bounds of the law," the qualified immunity doctrine ensures that an attorney "has the right to interpose any defense or supposed defense and make use of any right [on] behalf of such client or clients as [he] deemed proper and necessary, without making himself subject to liability in damages." *Reagan*, 2008 WL 2938823, at *2; *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Attorney immunity is not unlimited, however, and "attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Cantey Hanger*, 467 S.W.3d at 482 (citation omitted). The Texas Supreme Court has held that immunity does "not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation." *Id.* at 484. "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney,'" however. *Id.* at 483 (citation

10

omitted). The relevant inquiry is whether the attorney's conduct was part of discharging her duties in representing her client. *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) ("The dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit."). "Stated differently, an attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney." *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998) (citation and internal quotation marks omitted). Accordingly, "[e]ven meritless conduct is not actionable when it comes 'in the discharge of [an attorney's] duties in representing a party in a lawsuit.'" *Taco Bell Corp.*, 939 F. Supp. at 532 (citation omitted).

Here, Plaintiff sues Opposing Counsel based on their representation of Driver in the state court litigation. Although she alleges misrepresentation and conspiracy with other defendants, the conduct she cites relates to representation and appearing in court. These are activities that involve the professional training and skill of an attorney—activities to which qualified immunity traditionally applies. Plaintiff's state law claims—but not her federal law claims—against Opposing Counsel are barred by the doctrine of qualified immunity. *See Rojas*, 571 F. App'x at 278.

## V.  REMAINING PARTIES

Plaintiff sues the remaining defendants—Insurer,[9] CEO, and Parent Company; Driver;[10]

---

[9]  The pleadings are ambiguous with respect to Plaintiff's intent to name Insurer as a defendant in this case. (*See, e.g.*, doc. 1 at 1.) Because a *pro se* plaintiff's pleadings must be liberally construed, and ambiguity must be viewed in the *pro se* plaintiff's favor, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Insurer is treated as a named defendant.

[10]  To the extent Plaintiff seeks to relitigate the merits of the underlying state case against Driver, her claims are barred by *res judicata*. ""True res judicata" or "claim preclusion …bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). This doctrine has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013). To the extent Plaintiff seeks to assert "the same claim or cause of action" here as in state

Mediator; Opposing Counsel; and Plaintiff's attorneys—under various federal and state laws. (*See generally* docs. 12–15.)

A.    **Federal Claims**

Plaintiff brings claims under 42 U.S.C. §§ 1981, 1983, and 1985; the Civil Rights Act of 1866 and the Civil Rights Act of 1964 (CRA); the Americans with Disabilities Act (ADA); and the Age Discrimination Act. (*See generally* docs. 12–15.)

*1. Section 1981*

Plaintiff alleges that Defendants violated 42 U.S.C. § 1981. (*See* doc. 12 at 3, 5; doc. 13 at 11, 14, 26; doc. 14 at 2, 9, 11, 13, 15, 17, 19–20; doc. 15 at 8.)

"[Section] 1981 prohibits racial discrimination, both public and private, in the making or enforcement of contracts." *Gallentine v. Hous. Auth. of City of Port Arthur*, 919 F. Supp. 2d 787, 807 (E.D. Tex. 2013) (collecting cases). To sustain a § 1981 claim, Plaintiff must establish (1) that she is a member of a racial minority; (2) that a defendant had intent to discriminate based on race; and (3) that the discrimination concerned one or more activities enumerated in the statute, in this instance, the making and enforcing of a contract. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001).

Although Plaintiff has alleged that Defendants breached various contracts with her, she does not provide any factual basis beyond mere conclusory allegations for concluding that they intended to discriminate against her based on her race. She also does not adequately describe any relationship between her race and her contract claims. Plaintiff's § 1981 claims should be dismissed for failure to state a claim.

---

court, all four elements of *res judicata* are satisfied, and the doctrine would bar her from reasserting those claims.

### 2. Section 1983

Plaintiff sues Defendants under 42 U.S.C. § 1983. (*See* doc. 12 at 3, 5, 22; doc. 13 at 11, 14, 26; doc. 14 at 2, 9, 11, 13, 15, 17, 19–20; doc. 15 at 8.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). "For a private citizen … to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989)). "The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Id*. (citing *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994)). Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Id*. (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties); *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (a bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient to state a claim); *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 F. App'x 214, 217 (5th Cir. 2010) (per curiam) ("'Plaintiffs who assert conspiracy claims under civil

rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.'" (quoting *Lynch*, 810 F.2d at 1369–70).

Here, Plaintiff has alleged no facts to support her conclusory conspiracy claims. There is no factual basis for concluding that any of the defendants entered into an agreement with one another or with a state actor, or that they entered into an agreement the object of which was to deprive her of her civil rights. Plaintiff's § 1983 claims should also be dismissed for failure to state a claim upon which relief can be granted.

### 3. Section 1985

Plaintiff brings claims under 42 U.S.C. § 1985 as well. (*See* doc. 12 at 3, 5, 22; doc. 13 at 11, 13–14, 26; doc. 14 at 2, 9, 11, 13, 15, 17, 19–20; doc. 15 at 8.)

Although Plaintiff does not identify the subsection of § 1985 under which she is suing, her claims are liberally construed as arising under subsection (3), which involves the deprivation of rights or privileges under the law.[11] 42 U.S.C. § 1985(3). To state a claim, she must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). She must also allege that the conspirators were motivated by race. *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit . . . the only conspiracies actionable under section

---

[11]    Subsections (1) and (2) of § 1985 respectively prohibit conspiracies preventing an officer from performing duties, and obstructing justice by intimidation of a court party, witness, or juror. 42 U.S.C. §§ 1985(1), (2). The amended complaint does not assert any allegations relating to these provisions.

1983(3) are those motivated by racial animus.") (quoting *Deubert*, 820 F.2d at 757); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001). Plaintiff has not alleged any facts showing discrimination based on a suspect class for purposes of equal protection, or that any alleged conspiracy was motivated by racial animus. As discussed, she does not provide any facts supporting the conclusion that a conspiracy existed at all. Plaintiff fails to state a claim under § 1985.

### 4. Civil Rights Act

Plaintiff brings claims against Insurer and its CEO; Opposing Counsel; and Plaintiff's attorneys under the CRA. (*See* doc. 12 at 6, 22; doc. 13 at 11, 14, 26; doc. 14 at 2, 9, 11, 13, 15, 18, 20; doc. 15 at 8.)

The CRA contains seven Titles which each pertain to a different aspect of the act's sweeping anti-discrimination scope. 42 U.S.C. § 2000d *et seq.* For example, Title I secures equal voting rights to citizens, 52 U.S.C. § 10101, Title II prohibits discrimination in places of public accommodation, 42 U.S.C. § 2000a, and Title VII outlaws discrimination in employment, 42 U.S.C. § 2000e.

Here, Plaintiff alleges that Defendants discriminated against her on the basis of her race, citizenship, color, and "previous conditions" (doc. 12 at 6), but she does not allege that Defendants' conduct falls within the scope of any of the Titles of the CRA. For example, she does not allege that an insurance provider constitutes a public accommodation and therefore is governed by Title II, or that she was employed by any of the Defendants as required to state a claim under Title VII. She provides no factual support for any cognizable or plausible CRA claim. Her CRA claims should be dismissed for failure to state a claim.

### 5. Americans with Disabilities Act

Plaintiff also asserts claims under the ADA against Insurer and Parent Company; Mediator;

Opposing Counsel; and Plaintiff's attorneys. (*See* doc. 12 at 6, 22; doc. 13 at 11, 14, 26; doc. 14 at 2, 9, 11, 13, 15, 18–20; doc. 15 at 8.)

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "The ADA targets disability discrimination in employment (Title I), in public services (Title II), and in public accommodations and services operated by private entities (Title III)." *Van Velzor v. City of Burleson*, No. 3:12-CV-2508-G, 2013 WL 3579339, at *3 (N.D. Tex. July 12, 2013) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999)). Plaintiff does not cite to a particular Title or provision within the ADA, but she has not alleged that she is employed by Defendants, nor has she alleged that any public service provider is involved in this case. Accordingly, the only portion of the ADA that arguably applies is Title III.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To sustain a Title III claim, a plaintiff must establish that '(1) he or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Burrell v. Akinola*, No. 3:15-CV-3568-B, 2016 WL 3523781, at *2 (N.D. Tex. June 27, 2016) (citing *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).

Here, again, Plaintiff has failed to allege sufficient facts to support a claim under the ADA. She fails to allege facts showing that she is disabled within the meaning of the ADA, and she does

not allege that any of the defendants owns or operates a place of public accommodation. Her ADA claims should be dismissed for failure to state a claim upon which relief may be granted.

### 6. *Age Discrimination Act*

Plaintiff next alleges that Parent Company, Mediator, Opposing Counsel, and one of Second Attorneys discriminated against her on the basis of her age. (*See* doc. 12 at 6, 22; doc. 13 at 14; doc. 14 at 15, 18–19.) Her allegations are liberally construed as arising under the Age Discrimination Act of 1975.[12]

The purpose of the Age Discrimination Act is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. It provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. For a district court to have jurisdiction over a civil action filed by a plaintiff to enforce rights created by that statute, the plaintiff must have exhausted available administrative remedies. *See* 42 U.S.C. § 6104(e)(2)(B); *see also Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 (5th Cir. 2014) (citing 42 U.S.C. § 6104(e)(2)); *Parker v. Bd. of Sup'rs Univ. of La.*, 296 F. App'x 414, 417 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 6104(f)); *D.A. v. Hous. Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 620–21 (S.D. Tex. 2009) (citing *Parker v. Bd. of Sup'rs Univ. of La.*, 270 F. App'x 314, 317 (5th Cir. 2008)).

Here, Plaintiff has not alleged exhaustion of the administrative remedies available to her.

---

[12]  The only other federal law pertaining to age discrimination is the Age Discrimination in Employment Act of 1967 (ADEA). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As discussed, Plaintiff does not allege that any of the Defendants employed her. Accordingly, the ADEA is inapplicable in this case.

Additionally, it is not clear from the pleadings that this case involves any covered program or activity that receives federal funding. *See* 42 U.S.C. § 6101. Accordingly, Plaintiff's age discrimination claims should be dismissed for failure to state a claim. *See Coleman v. Devos*, No. 3:19-CV-2417-D-BH, 2020 WL 9219408 (N.D. Tex. Dec. 28, 2020) (dismissing claims under the Age Discrimination Act with prejudice for failure to state a claim).

**B.    State Law Claims**

Plaintiff also brings claims under state law for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, legal malpractice, negligence, and for violations of the Texas Penal Code.[13] (*See generally* docs. 12–15.)

*1. Breach of Contract*

Plaintiff sues Insurer, Parent Company, and CEO as well as Plaintiff's attorneys, for breach of contract. (*See* doc. 12 at 4–5; doc. 13 at 14, 26; doc. 14 at 2, 9, 11, 13, 17, 20; doc. 15 at 8.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by

---

[13]  Under 28 U.S.C. § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Tex. Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute," however. *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a plaintiff's] right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). Here, all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, so the Court should exercise supplemental jurisdiction and consider the claims on the merits. *See Thomas*, 294 F. Supp. 3d at 613.

the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Here, Plaintiff alleges in a conclusory fashion that several of the defendants breached the various contracts that they entered into with her. She attached these contracts to her pleadings, thereby satisfying the first element of a breach of contract claim. *See Mullins*, 564 F.3d at 418. She fails to identify which terms of the agreements were breached or allege facts establishing how those terms were breached. She also does not allege that she performed under the agreements. Her breach of contract claims should be dismissed for failure to state a claim upon which relief may be granted.

### 2. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff alleges that CEO breached the duty of good faith and fair dealing. (doc. 12 at 3.)

In Texas, "[a] claim for breach of [the] duty of good faith and fair dealing is a tort action that arises from an underlying contract." *Souto v. Bank of Am., N.A.*, No. H-11-3556, 2012 WL 3638024, at *4 (S.D. Tex. Aug. 22, 2012) (citing *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)). The duty of good faith and fair dealing generally applies in limited circumstances involving a "special relationship" between the parties, such as between insurers and insureds, principal and agent, joint ventures, and partners. *See Hall v. Resolution Tr. Corp.*, 958 F.2d 75, 79 (5th Cir. 1992); *see also City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) ("We have specifically rejected the implication of a general duty of good faith and fair dealing in all contracts." (internal quotation marks omitted)). "An insurer owes a duty of good faith in handling its insured's own claim of loss." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003).

19

An insurer breaches its duty of good faith and fair dealing when "there is no reasonable basis for [its] denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990). "Similar to that common-law duty, the [Texas] Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018).

Again, Plaintiff does not provide enough factual content to render her claim for relief plausible. She alleges that Insurer's investigatory process was inadequate because in making its coverage determinations, it purportedly ignored the accident report and declined to consider the fact that Driver was inebriated when the accident occurred. (*See* doc. 12 at 4.) Plaintiff fails to allege that that inadequate investigation led to any adverse coverage determination. Indeed, the pleadings do not contain any information regarding the coverage that was ultimately provided to Plaintiff; she does not allege that Insurer failed to provide coverage for her injuries or property damage as dictated by the insurance agreement. In short, Plaintiff has failed to allege any facts that support a claim that CEO or Insurer breached the duty of good faith owed to her. This claim should be dismissed.

### 3. Legal Malpractice

Plaintiff also accuses Second Attorneys of committing legal malpractice. (doc. 13 at 20; doc. 14 at 9, 17.)

Under Texas law, to state a claim for legal malpractice, a plaintiff must establish that: "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's

breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017) (citing *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016)); *see also Janvey v. Proskauer Rose LLP*, No. 3:13-CV-0477-N, 2015 WL 11121540, at *6 (N.D. Tex. June 23, 2015) (citing *Duerr v. Brown*, 262 S.W.3d 63, 76 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). Attorneys are "held to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). "When a legal-malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Rogers*, 518 S.W.3d at 401.

Plaintiff does not allege that her attorneys breached the applicable standard of care. The pleadings are devoid of any allegation that the outcome of the state court case would have been different had Second Attorneys represented her differently. Plaintiff's conclusory allegations that her attorneys "intentionally and maliciously misrepresented [their] legal representation (Legal Malpractice)" and that they "had no intent of legally representing the Plaintiff in her Case" are not sufficient to render her claims plausible. (doc. 13 at 20.) Her legal malpractice claims should be dismissed.

### 4. Breach of Fiduciary Duty

Plaintiff also alleges that Second Attorneys breached the fiduciary duties owed to her. (doc. 13 at 14; doc. 14 at 9, 17.)

Under Texas law, the essential elements of a breach of fiduciary duty claim are "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to

the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.)). A fiduciary duty can arise from certain formal relationships as a matter of law, including an attorney-client relationship. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002).

"Typically, breach of fiduciary duty by an attorney involves 'the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations.'" *Archer v. Med. Protective Co. of Fort Wayne*, No. 2:03-CV-314-C, 2004 WL 1194455, at *5 (N.D. Tex. May 28, 2004) (quoting *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). The critical question is generally "whether an attorney obtained an improper benefit from representing a client[.]" *Id.* (internal quotation marks omitted) (quoting *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied)).

Additionally, "Texas law does not allow the practice of fracturing legal malpractice claims where the additional claims constitute no more than claims for legal malpractice under another guise." *Id.* (citing *Gulf Ins. Co. v. Jones*, No. 3:00-CV-0330-L, 2003 WL 22208551, at *15 (N.D. Tex. Sept. 24, 2003)); *see also Goffney*, 56 S.W.3d at 194. In other words,

> [a]ttorneys may be liable for a breach of fiduciary duty, but such a claim requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action. If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim.

*McMahan v. Greenwood*, 108 S.W.3d 467, 495 (Tex. App.—Houston [14th Dist.] 2003, pet.

denied). "In order to determine whether Plaintiff has improperly fractured her claim for legal malpractice, the Court must examine the nature of her claims." *Archer*, 2004 WL 1194455, at *4.

Plaintiff again fails to allege sufficient factual content to give rise to a claim for relief. She does not allege that a fiduciary relationship existed between her and her attorneys, and she fails to provide a factual basis for her conclusory statements that her attorneys breached the fiduciary duties they owed to her. She does not allege that her attorneys engaged in the sort of self-dealing or deception indicative of a breach of fiduciary duty; she baldly alleges that her attorneys made misrepresentations to her regarding their intent to represent her. (*See* doc. 13 at 20.) Moreover, Plaintiff's claims for breach of fiduciary duty appear identical in content to her claims for legal malpractice; she is attempting to impermissibly fracture her legal malpractice claims. Her claims for breach of fiduciary duty should be dismissed for failure to state a claim.

### 5. Negligence

Plaintiff sues Second Attorneys for negligence. (doc. 14 at 17.) The elements of a "negligence" cause of action under Texas law are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 2601526, at *6 (N.D. Tex. July 1, 2011) (citing *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005)). Plaintiff again fails to allege facts that support these elements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.). She does not state what duty was owed to her or how that duty was breached, and she does not establish any causal link between that purported breach and any legally cognizable injury she may have sustained. Her negligence claim should be dismissed.

### 6. Texas Penal Code

Plaintiff lastly asserts several claims under the Texas Penal Code.[14] (*See, e.g.*, doc. 12 at 6; doc. 14 at 18.)

"Texas does not recognize private causes of action for penal code violations." *Joyner v. DeFriend*, 255 S.W.3d 281, 283 (Tex. App.—Waco 2008, no pet.) (citing *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998)); *see also Kiggundu v. Mortg. Elec. Registration Sys., Inc.*, No. 4:11-1068, 2011 WL 2606359, at *6 n.79 (S.D. Tex. June 30, 2011), *aff'd by* 469 F. App'x 330 (5th Cir. 2012) (holding claim under Texas Penal Code § 32.47 "fail[ed] as a matter of law because the Texas Penal Code does not create a private right of action); *Mathis v. DCR Mortg. III Sub I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013) (dismissing claim for forgery in violation of the Texas Penal Code because "the Texas Penal Code does not create a private cause of action"). Plaintiff's claims under the Texas Penal Code should be dismissed for failure to state a claim.

## VI. LEAVE TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

---

[14]   The claims asserted under the Texas Penal Code include all claims for abuse of power or abuse of official capacity (*see* doc. 12 at 6; doc. 13 at 14, 26; doc. 14 at 2, 13, 17–20); the claims against Second Attorneys for official oppression (*see* doc. 13 at 14); and any other claims expressly asserted under the Texas Penal Code (*see* doc. 14 at 9, 18).

Leave to amend is not necessary, however, where the plaintiff has already pled his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

Here, Plaintiff's detailed questionnaire responses total approximately 100 pages. She has had ample opportunity to plead her best case, and further leave to amend is not warranted.

## III. RECOMMENDATION

The official capacity claims against the judges and their staff should be **DISMISSED without prejudice** under the Eleventh Amendment, and the remaining claims should be **DISMISSED with prejudice** for failure to state a claim.

**SO RECOMMENDED** on this 27th day of November, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

26